## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAIRE GILLIGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>          Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Claire Gilligan ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Samsung Electronics America, Inc. ("Defendant" or "Samsung").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

### NATURE OF THE ACTION

1. This is a class action against Defendant for falsely and misleadingly concealing and failing to disclose the fact that its S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note 5 smartphones (the "Affected Models") are prone to overheating, fire, and explosion.

2. Defendant's Galaxy Note 7 smartphone made international headlines in recent months with reports of phones that overheated and caught fire, damaging property and injuring people throughout the United States.  However, Defendant has failed to warn consumers of similar dangers from the Affected Models, which use similar or identical lithium ion batteries to those in the Note 7.

3. Defendant has been repeatedly made aware of the dangers of the Affected Models, but has concealed from customers the dangers posed by the lithium ion batteries in these

models.  Further, Defendant encourages customers such as Plaintiff to use the Affected Models in all aspects of their lives, and markets its phones as reliable.

4.      Defendant designs, manufactures, and advertises the lithium ion batteries in its smartphones to have the longest possible battery life with the shortest possible charging time.  At the same time, Defendant designs, manufactures, and advertises its smartphones to have superior computing capability and power, allowing them to run numerous applications and programs simultaneously.  This conflict led Defendant to cut corners and manufacture entire lines of smartphones that pose risks of overheating, fire, and explosion.

5.      Having put the Affected Models into the market, however, Defendant has failed to adequately inform consumers of the risks posed by its smartphones, as well as to recall the Affected Models, and to respond to consumers whose phones have suffered from overheating, fire and/or explosion.

6.      As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiff and the members of the Class, as defined herein, purchased the Affected Models and paid more for them because they were falsely led to believe that the Affected Models were safer than they, in fact, were.

7.      Plaintiff seeks relief in this action individually and on a class-wide basis for breach of warranty, unjust enrichment, and for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann., 73 P.S. §201-1.

## THE PARTIES

8.      Plaintiff Claire Gilligan is a citizen of Pennsylvania, residing in Northampton County.  In or about March 2016, Plaintiff purchased a Samsung Galaxy S7, one of the Affected Models.  Since the original purchase, Plaintiff's S7 was replaced four times.  Her original phone frequently overheated causing her phone and/or applications in use to freeze.  She was issued a replacement S7 through AT&T.  The replacement S7 also overheated, so she received a second replacement S7 through AT&T.   Plaintiff faced similar problems due to overheating with her second replacement phone, and as a result, returned the second phone and received a third replacement phone.  Plaintiff also experienced excessive overheating while using her third

replacement phone (her fourth S7) under normal use.  Additionally, Plaintiff needed to get a replacement charger from AT&T after the charger she was using with her fourth S7 started smoking, smelled like burnt plastic, and became excessively hot while the device was charging. Plaintiff became unable to use the device for long periods of time.  On Friday, December 9, 2016, and Tuesday, December 13, 2016, Plaintiff spoke with AT&T representatives concerning the issues she was experiencing with her fourth S7.  AT&T offered to send her an S7 Active as a replacement, however, the S7 Active is also one of the Affected Models herein.  Plaintiff accepted the offer and received the S7 Active on Friday, December 16, 2016.  On Monday, December 19, 2016, Plaintiff mailed her fourth S7 back to AT&T.  Had Plaintiff known about Samsung's deceptive conduct, Plaintiff would not have purchased the S7, or she would have paid less for it.  Plaintiff suffered an injury in fact as a result of Defendant's deceptive, misleading, false, unfair, and fraudulent practices, as described herein.

9.     Defendant Samsung Electronics America, Inc. is a New York corporation with its principal place of business in Ridgefield Park, New Jersey.  Samsung is a wholly-owned subsidiary of Samsung Electronics Co. Ltd., which is a Korean company headquartered in Suwon, South Korea.  Defendant has been and still is engaged in the business of distributing, marketing, and selling cellular phones throughout the United States and this District.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is incorporated in this District and Defendant does business throughout this District, including selling and distributing the Affected Models at issue in this District.

## ADDITIONAL FACTUAL ALLEGATIONS

12.     Defendant makes Android-based smartphones, including its popular "Galaxy" line of smartphones and its "Note" line of smartphone/tablet hybrids.  Since 2010, it has released

a new flagship "numbered" model (such as the Galaxy S6) every year, with variants throughout the year such as the "Edge", "Edge+" or "Active" as part of the model name.

13.     The "Galaxy" and "Note" smartphone lines are powered by lithium ion batteries. Lithium ion batteries power numerous consumer electronics, including smartphones, laptop computers, and power tools. Prior to the Affected Models, Samsung's phones had removable lithium ion batteries, but as of the S6 and Note 5 models – as well as subsequent models – the batteries are entirely integrated into and encompassed by the smartphone.

14.     Samsung's decision to fully integrate the battery into its smartphones allowed Samsung to include a larger battery relative to the size of the phone.  However, in doing this, Samsung removed safety features that were inherent in a nonintegrated battery.

15.     Additionally, the Affected Models were designed, engineered, developed, manufactured, produced and/or assembled using a substantially similar method to the Note 7 and all pose a risk of overheating, fire, and explosion.  Further, Samsung's Note 7 batteries were only tested internally, and not by any outside testing group.  Samsung is the only major smartphone manufacturer not to use independent battery testing.[1]  On information and belief, the batteries for the Affected Models were also not subject to independent testing.

16.     Samsung has recalled the Note 7, but has not recalled any of the Affected Models.

17.     The Consumer Product Safety Commission ("CPSC") ordered a formal recall of the Note 7 on September 15, 2016.[2]  The Note 7 has also been banned on all commercial air travel by order of the FAA, and numerous businesses and venues have asked they not be brought to their establishments out of liability concerns.

18.     The Note 7 investigation is ongoing, though Samsung admits that there is a "battery cell issue" with the Note 7.[3]

---

[1] *See* http://fortune.com/2016/10/17/samsung-reportedly-self-tested-its-galaxy-note-7-batteries/, last accessed Dec. 13, 2016.

[2] *See* http://money.cnn.com/2016/09/15/technology/samsung-galaxy-note-7-cpsc/, last accessed Dec. 13, 2016.

[3] *See* https://news.samsung.com/global/statement-on-galaxy-note7, last accessed Dec. 13, 2016.

19.    Lithium ion batteries present inherent risks, and these risks depend upon proper software, hardware, and design solutions to operate safely.  The electrolyte materials in the batteries are highly volatile, flammable, and potentially explosive.  As one article in *Time* magazine which examined the Note 7 problem stated:

> If the temperature gets high enough. . .at some point, if you get up to about 400-500 degrees Centigrade, the metal oxide in the negative electrode actually starts liberating oxygen.  And that's really dangerous, because now, instead of having a fire. . .getting its oxygen from the air surrounding it, it's getting its oxygen from inside the battery itself.  The term of art is, this has now become a bomb.  You've got fuel and oxygen in the same place at the same time.[4]

20.    This can also be referred to as a "thermal runaway event."  A thermal runaway event can generate temperatures as high as 1100 degrees Fahrenheit.  Several things can cause a thermal runaway event.  According to *Scientific American*:

> . . .faulty batteries can be overcharged. Well-made batteries will stop charging automatically once they're full, but that's not always the case for faulty batteries. . .If left plugged in for too long, the lithium ions can collect in one spot and be deposited as metallic lithium within the battery. . .Also, heat from the overcharging can cause oxygen bubbles within the gel, which are highly reactive with metallic lithium[5].

21.    Further, the FAA limits the number and method of carriage of lithium ion batteries by passengers because of their inherent riskiness.  For example, the FAA prohibits the carriage of vendor samples or resale batteries on board passenger airplanes, and all lithium ion batteries must be carried in the passenger compartment and may not be checked.[6]

22.    In smartphones, software and hardware are both responsible for regulating the temperature, charging, and use of the battery.  If software protocols are programmed incorrectly,

---

[4] *See* http://time.com/4485396/samsung-note-7-battery-fire-why/, last accessed Dec. 13, 2016.

[5] *See* https://www.scientificamerican.com/article/the-science-behind-samsung-phone-battery-fires/, last accessed Dec. 13, 2016.

[6] *See* https://www.faa.gov/about/initiatives/hazmat_safety/more_info/?hazmat=7, last accessed Dec. 13, 2016.

a thermal runaway event can occur.  If the smartphone hardware malfunctions, a thermal runaway event can occur.  If the battery is damaged during production or in shipping, a thermal runaway event can occur.  Similarly, poor manufacturing can lead to thermal runaway events. Samsung initially stated that the Note 7 problem was limited to only one of two battery suppliers, now known to be Samsung SDI.  However, after the initial recall and exchange of the Note 7, more explosions were reported, and on October 13, 2016, Samsung announced it was recalling every single Note 7, whether original or exchanged.   Many, if not most, of Samsung's smartphone batteries are produced by subsidiary Samsung SDI.[7]  Samsung SDI and Amperex Technology, a subsidiary of TDK, were the suppliers for the Note 7.[8]  However, virtually all batteries affected in the first recall were made by Samsung SDI.  *Id.*

23.    Samsung further instructed its customers with Note 7s to "please power [them] down immediately" and "contact the carrier or retail outlet where they purchased their device.[9]"

24.    As part of a Note 7 Refund and Exchange Program, Samsung allowed customers to either (1) exchange their Note 7 for another Samsung smartphone and replace Note 7 accessories with a refund of the price difference between devices; or (2) obtain a refund at the point of purchase.[10]   Additionally, Samsung offered bill credits for customers turning in their original Note 7s or their replacement Note 7s.  However, Samsung took no steps to recall or warn consumers about the risk to the Affected Models.  Class members here should be offered the same or similar relief offered to Note 7 owners.

25.    Samsung has known of similar incidents in older smartphones and electronic devices for years due to reports from consumer protection agencies and the media for years. However, despite this, Samsung has failed to fix the root problem at the heart of its batteries, as

---

[7] *See* http://www.reuters.com/article/us-samsung-sdi-batteries-idUSKBN13I2NM, last accessed Dec. 13, 2016.

[8] *See* https://www.ft.com/content/d7445be2-8f9c-11e6-8df8-d3778b55a923, last accessed Dec. 5, 2016.

[9] *See* http://www.samsung.com/us/note7recall/, last accessed Dec. 13, 2016.

[10] *See id.*

well as to notify or warn the public of the dangers the Affected Models represent, or to initiate a recall of the affected models.

26.     The CPSC has recorded numerous consumer incident reports of Samsung smartphones overheating, catching fire, and exploding over the years.  The reports include, among other models, the Galaxy S2, the Galaxy Tab2, the Galaxy Tab3, the Galaxy S3, the Galaxy S4, the Galaxy S5, as well as the Affected Models, including the Galaxy S6 Edge, and the Galaxy S6 Active.  Such consumer complaints date back to at least August 2011.

27.     The following is a sample of complaints to the CPSC:

- On January 20, 2014, a consumer reported that a Samsung Galaxy S3 and charging cord became "visibly burned and melted." The consumer reported "[i]t looks like it had been on fire momentarily." The incident occurred while the device was charging. CPSC Report No. 20140120-0DFDC-2147448018.

- On May 1, 2014, a consumer reported that a Galaxy S4 became "extremely hot" and burned the consumer's son. The consumer contacted Samsung about the incident, but they had not called back at the time of the report. The consumer reported he felt the "phone is dangerous." CPSC Report No. 20140501-C2DA6-2147444903.

- On September 29, 2014, a consumer reported that a Galaxy S4 began smoking and the "battery caught on fire," damaging the consumer's floor. The consumer reported the incident directly to Samsung. CPSC Report No. 20140929-BD00A-1431381.

- On November 2, 2014, a consumer reported that a Galaxy S4 began burning in the consumer's pocket. When the consumer pulled the phone out of his or her pocket, it seared the consumer's skin. The consumer further reported "[t]he temperature was equivalent to pulling something out of the oven after baking or boiling water and dunking your hand in it." CPSC Report No. 20141102-D37FA-2147439274.

- On December 30, 2014, a consumer reported that a Galaxy S4 "literally melted to [the consumer's] counter" while charging. The consumer further reported that "[t]he area around the charging port was black and melted." CPSC Report No. 20141230-C86A9-2147437158.

- On September 19, 2015, a consumer reported that the Samsung charging device for a Galaxy S6 was "overheating excessively under normal use." "The consumer further reported that the heating was "severe" enough to burn the consumer. CPSC Report No. 20150919-9088D- 2147428266.

- On December 29, 2015, a consumer reported that a Samsung phone charger for a "Newer Samsung Galaxy" had "almost started on fire." The "phone was red hot," the tip of the charger was black, and the phone was "completely toast." The consumer further reported:

"Totally unsafe! My house could have started on fire." CPSC Report No. 20151229-96F83-2147425364.

- On January 18, 2016, a consumer reported that a Galaxy S6 Edge became "extremely hot to touch," and developed a crack in the screen. CPSC Report No. 20160118-B87EB-2147424570.

- On January 23, 2016, a consumer reported that a Galaxy S6 began emitting a "strange smell," and that the Samsung charger was "warped, melted, and discolored." The consumer further reported that the phone was "extremely hot" to the point it would have "burned a small child." The incident occurred while the phone was charging. CPSC Report No. 20160123-F8845-2147424397.

- On January 14, 2016, a consumer reported that a charging device for a Galaxy S4 got "extremely hot and started to melt." CPSC Report No. 20160114-AC115-1545877.

- On March 21, 2016, a consumer reported that a Samsung charging device for a Galaxy S6 "caught on fire and melted." CPSC Report No. 20160321-83C90-2147420788.

- On September 16, 2016, a consumer reported that a Galaxy S4 Active "melted" into the charging cable. The phone burned the consumer's finger. The consumer further reported that the phone "probably could have got a fire." CPSC Report No. 20160916-61984-2147414098.

- On September 16, 2016, a consumer reported that the battery of a Samsung Galaxy S5 is "bulging" and the phone is "warm to touch." The consumer further reported that Samsung refused to do anything other than sell the customer a new battery because the phone "had not yet exploded." CPSC Report No. 20160916-13A98-2147414102.

- On September 16, 2016, a consumer reported that a Samsung Galaxy S6 Active "burned up while charging via a Samsung charger." The incident set off smoke alarms, filled the customer's bedroom with smoke, charred curtains and bedding, and burned through the hardcover of a book. The consumer reported that she contacted Samsung about the incident, and that Samsung gave her the "runaround." CPSC Report No. 20160916-1BB3F-2147414093.

    28.    Similarly, saferproducts.gov has received numerous complaints related to the

Affected Models:

- On September 23, 2016, a consumer reported using a Samsung Galaxy S6 "when it started reporting it no longer had service. It then got very hot near the power button. I burnt my finger trying to get it to turn off." The consumer explained that "Despite getting hot enough that I got a burn that blistered, the phone has never reported itself as being overheated."

- On September 21, 2016, a consumer reported their Galaxy S6 "heats up to the point where it can't be used because it'll burn," and that Samsung had refused to address his serious concern about his own safety and risk of fire or explosion.

- On September 19, 2016, a consumer reported their five month old Galaxy S6 charger was overheating and had "melted plastic from the overheating of the charger." The consumer reported the "Heating is severe," and that the phone "gets very hot to the touch. . . enough to burn myself." The consumer also reported that the "chargers are original chargers, from the box . . . that came with the phone."

- On August 17, 2016, a consumer being burned and scarred as a result of repeated overheating of their Galaxy S6 Edge.

- On January 18, 2016, a consumer reported that "during operation" of their Galaxy S6 Edge, it "became extremely hot to touch and the screen developed a crack."

- On September 30, 2016, a consumer reported the following about their Galaxy S6 Active: "9-26-2016 I woke up at 5:30 took phone off charger and did usual checking email and played games on phone until 6:30. Phone was not hot that I could tell. After taking kids to the bus about 20 minutes without using the phone I took it out of my pocket laid it on my bed and it popped really loud and start spewing smoke and melted plastic out of the phone on both ends, screen shattered and the case melted. The smoke alarms went off and the phone was too hot to touch."

- On September 16, 2016, a consumer reported their Galaxy S6 Active "burned up while charging via a Samsung charger. The smoke alarms went off and our bedroom was filled with smoke. There was char on the curtains about 2 feet away from the bed and charred marks on the headboard; the phone burned through the hardcover of a book." The consumer complained about receiving the "runaround" from Samsung customer service and suffering through substantial delays prior to receiving a replacement and check for the property damage.

- On September 2, 2016, a consumer reported the battery in their Galaxy S6 Active caught fire and nearly caused a house fire.

- On June 21, 2016, a consumer reported that at "1230 am on June 9, 2016 using the Samsung charger that is issued with the phone. The phone was sitting on the side of the bed, with nothing covering it, and around 4am [] it pretty much exploded and caught on fire. The sound was so loud it woke my child up in the next room. The fire burnt through my sheets, mattress . . ."

- On October 1, 2016, a consumer reported their Galaxy S7 was having significant problems with the "phone getting extremely and dangerously hot." The consumer reported the problem to Samsung, but was told that the S7 was not affected by the recall of the Note 7 and that Samsung would not replace it because it was outside the 30-day warranty period. According to the report, the problem worsened until the "phone got so hot that it melted into the [] case."

- On September 26, 2016, a consumer reported her phone charger cord was "hot, melted and smoking" while her Galaxy S7 was plugged in and charging.

- On September 16, 2016, a consumer reported her "two-month-old Samsung S7 Edge got so hot that it burned my hand and I could not hold onto it."

- On September 10, 2016, a consumer reported he had placed his S7 Edge in his "right front pocket" and that "shortly thereafter he noticed his phone whistling, screeching, and vibrating, as well as smoke coming from his pocket." According to the report, the consumer suffered burns to his hand when he tried to remove the phone from his pocket and that, "without warning the S7 Edge exploded and caught fire" causing second and third degree burns.

29.     Samsung was and is aware of these reports, and has acknowledged them by responding on the CPSC's website with a boilerplate response.  Many of the customers reporting problems with the Affected Models state that Samsung has refused to take their concerns seriously and has refused to provide compensation beyond replacing their phones with similarly risky products.

30.     In developing the S7, Samsung relied on unconventional technology and unproven designs to attempt to solve its overheating problem.  Specifically, it uses what it describes as a "thermal spreader," which "calculate[s] the amount of electric current and optimizes the heat control algorithm to minimize the heat which occurs.  In other words, the new thermal spreader hardware controls the heat more effectively but the software heat control algorithm must be made compatible to ensure best performance."[11]

31.     Samsung's lithium ion batteries, like all industry smartphone batteries, are measured in milli-ampere hours ("mAh"), a unit of electrical charge that shows the capacity of a battery.  A battery's discharge rate is the amount of current drawn from the battery, so the life of the battery depends on factors including the capacity, the discharge rate, and the age of the battery.

---

[11] Originally at https://news.samsung.com/global/faces-of-innovation-galaxy-s7-s7-edge-how-we-created-the-cooling-system-inthe-galaxy-s7-and-s7-edge, but no longer available.

32.     The following chart shows the battery capacity, area, and weight for the Affected Models as well as the Note 7.[12]  It demonstrates that as capacity increases, total battery area and weight must increase accordingly, while fitting in to a roughly similar space inside the phone:

| Galaxy S Series   Batteries | | | |
|---|---|---|---|
| Model | Capacity | Area | Weight |
| S6 | 2550 mAh | 68,746 mm$^3$ | 138.0 g |
| S6 Edge | 2600 mAh | 69,729 mm$^3$ | 132.0 g |
| S6 Edge+ | 3000 mAh | 80,754 mm$^3$ | 153.0 g |
| S7 | 3000 mAh | 78,297 mm$^3$ | 152.0 g |
| S6 Active | 3500 mAh | 92,666 mm$^3$ | 170.0 g |
| S7 Edge | 3600 mAh | 84,356 mm$^3$ | 157.0 g |
| S7 Active | 4000 mAh | 110,337 mm$^3$ | 184.8 g |
| Galaxy Note   Batteries | | | |
| Model | Capacity | Area | Weight |
| Note 5 | 3000 mAh | 88,605 mm$^3$ | 171.0 g |
| Note 7 | 3500 mAh | 89,614 mm$^3$ | 169.0 g |

33.     The following graph shows area versus battery capacity for the Affected Models and the Note 7:

---

[12] All battery area and weight calculations use data from http://www.gsmarena.com.



34.    The following graph shows weight versus battery capacity for the Affected Models and the Note 7:



35.     Both graphs in paragraphs 33 and 34 above demonstrate that the Note 7's battery capacity when compared to its weight and total area are similar to those of the Affected Models. This indicates that the batteries of the Affected Models are similar in nature to the batteries of the Note 7 and may be subject to the same physical design problems that have plagued the Note 7.

36.     Samsung's investigation into the cause of the explosion continues, but as the New York Times has noted,

> Many battery specialists say they believe that the failure lies in the South Korean electronics companies' desire to create a thinner battery package, leading to the design of an ultrathin separator, a safety feature intended to prevent battery electrodes from contacting each other directly. That could create a short circuit, leading to fire or explosion.

37.     Further:

> This use of liquid electrolytes is an inherent, potential flaw in lithium-ion batteries. They are based on liquid electrolytes, a material used to ensure the movement of ions, or charged particles, between the electrodes as the batteries are charged and discharged.[13]

38.     Samsung makes no mention of these widely-recognized risks in the sales and marketing of its phones, instead focusing on aspects of durability and shortened charging time, leading consumers to believe that lithium-ion batteries are far safer and more durable than, in fact, they are.

39.     Samsung marketed the S6 Active as "high durability" and "a smartphone that brings ruggedized capabilities and water resistance coupled with the camera, battery and design features that empower our consumers and business users to do more."[14]

40.     However, Samsung here failed to disclose the risks of bending or flexing such "high durability" phones, which can lead to physical damage of the battery which, in turn, can cause thermal runaway events.

---

[13] *See* http://www.nytimes.com/2016/12/11/technology/designing-a-safer-battery-for-smartphones-that-wont-catch-fire.html, last accessed Dec. 15, 2016.

[14] *See* https://news.samsung.com/global/Samsung-galaxy-s6-active-available-exclusively-at-att, last accessed Dec. 13, 2016.

41.     Further, it said of the S6 Active, "Samsung adheres to its notoriously strict quality control policy. Each product undergoes intense durability testing such as drop tests, bending test and performance testing among many other steps Samsung takes to ensure the highest quality products. By fusing together innovation with durability, Samsung is able to provide the level of quality consumers expect from Samsung."[15]

42.     However, Samsung failed to disclose that these tests are internal to the company, and are not done with external testing and verification of internal results.

43.     Samsung also worked to decrease the charging time, advertising that for the S6, S7 and Note 5 models, charging could be fully accomplished in ninety minutes.

44.     As part of its advertising, Samsung said of the S7 and S7 Edge models that "our phones go everywhere with us,"[16] and touted the battery performance and fast-charging capability, saying they charge "in no time."[17]

45.     However, Samsung failed to disclose that in decreasing charging time, changes needed to be made to the phones that made them more prone to overheating and thermal runaway events.

46.     Samsung attempted to conceal the scope of the Note 7 problem during its recall. Among other tactics, it reportedly offered one Chinese customer $900 not to publicize a video of his Note 7 overheating and sparking.[18]

47.     Samsung also issued copyright claims to YouTube in order to prevent parody videos posted by the public of Note 7 explosions from being displayed on its site.[19]

---

[15] *See* https://news.samsung.com/global/forming-glass-forging-metal-the-art-of-craftsmanship-in-the-galaxy-s6, last accessed Dec. 13, 2016.

[16] http://samsung-galaxy-s7-s7-edge.blogspot.com/2016/08/blog-post.html, last accessed Dec. 13, 2016.

[17] *See* http://web.archive.org/web/20160602052920/http://www.samsung.com/us/explore/galaxy-s7-features-and-specs/, last accessed Dec. 13, 22016

[18] *See* http://www.nytimes.com/2016/10/19/business/samsung-galaxy-note7-china-test.html, last accessed Dec. 13, 2016.

[19] *See* http://www.bbc.com/news/technology-37713939, last accessed Dec. 13, 2016.

48.     Despite this, though, Samsung has made no effort to warn the public of similar dangers for its Affected Models.

49.     In fact, on October 12, 2016, Samsung reportedly sent push notifications directly to some customers' smartphones (including the Affected Models) to inform them that their phones had not been affected by the Note 7 recall and that they should continue to use them normally.   Accordingly, Samsung fails to disclose that the Affected Models are subject to the same issues faced by the Note 7.

**CLASS ACTION ALLEGATIONS**

50.     Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23(b)(2) and (3) on behalf of all persons in the United States who, within the relevant statutes of limitations periods, purchased the Affected Models manufactured by Defendant (the "Nationwide Class").

51.     Plaintiff seeks to represent a subclass also under Fed. R. Civ. P. 23(b)(2) and (3) defined as all members of the Nationwide Class who purchased the Affected Models in Pennsylvania (the "Pennsylvania Subclass").   The Nationwide Class and Pennsylvania Subclass are sometimes collectively referred to herein as the "Class".

52.     Excluded from the Nationwide Class and Pennsylvania Subclass are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, any entity in which Defendant has or had a controlling interest, and any judge assigned to the case.   Personal injury claims are also excluded.

53.     Also excluded from the Nationwide Class and Pennsylvania Subclass are persons or entities that purchased the Affected Models for purposes of resale.

54.     Plaintiff is a member of the Nationwide Class and the Pennsylvania Subclass she seeks to represent.

55.     The Class is so numerous that joinder of all members is impractical.   Although Plaintiff does not yet know the exact size of the Class, the products are sold in retail locations

throughout the United States, and on information and belief, members of the Class number in the hundreds of thousands, if not millions.

56.     The Class is ascertainable because its members can be identified by objective criteria – the purchase of the Affected Models during the statute of limitations periods. Individual notice can be provided to Class members "who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

57.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to whether the advertising, marketing and/or sale of the Affected Models was false or misleading.

58.     A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.  Defendant has directed and continues to direct its conduct to all consumers in a uniform manner. Therefore, injunctive relief on a classwide basis is necessary to remedy continuing harms to Plaintiff and the Class members caused by Defendant's continuing misconduct.   For example, Class members here should be offered the same or similar relief offered to Note 7 owners, as described above in paragraph 24.

59.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other members of the Class.   Plaintiff and all members of the Class have sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

60.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members he seeks to represent, she has retained counsel that is competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

61.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

**FIRST CLAIM FOR RELIEF**
**(Breach of Express Warranty)**
**(By Plaintiff on Behalf of the Nationwide Class)**

62.     Plaintiff repeats the allegations contained in paragraphs 1 to 61 above as if fully set forth herein.

63.     Plaintiff brings this Count individually and on behalf of the members of the Class.

64.     As noted above, Defendant designed its products so that its batteries were prone to overheating, fire, and/or explosion.

65.     Defendant has represented that the Affected Models are safe for normal use, and has advertised them as such.

66.     Defendant's affirmations of fact and promises made to Plaintiff and the Class on the Affected Model labels became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and the Class on the other, thereby creating express warranties that the Affected Models would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

67.     Plaintiff and the members of the Class relied on Defendant's affirmations of fact and promises that Defendant's Affected Models were fit for normal use.

17

68.     Defendant breached its express warranties because the Affected Models, in fact, are at serious risk of overheating, catching fire, and/or exploding.

69.     Because Defendant has responded to complaints by customers of overheating, fire, and/or explosion on government websites, Defendant had or should have had actual knowledge of the defect.  This defect affected all of the Affected Models, including the specific item purchased by Plaintiff.

70.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach.

**SECOND CLAIM FOR RELIEF**
**(Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann., 73 P.S. §201-1)**
**(By Plaintiff on Behalf of the Pennsylvania Subclass)**

71.     Plaintiff on behalf of herself and the Pennsylvania Subclass, repeats and reasserts each of the allegations contained in paragraphs 1 to 61 above as if fully set forth herein.

72.     This cause of action is brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL").  Plaintiff is a person as defined by 73 P.S. § 201-2(2).  The Affected Models are within the stream of "trade or commerce" within the meaning of the PUTPCPL.

73.     Defendant violated and continues to violate the PUTPCPL by engaging in the following practices proscribed by 73 P.S. § 201-2(4) in transactions with Plaintiff and the Pennsylvania Subclass which were intended to result in, and did result in, the sale of the Affected Models in question:

> (v)     Representing that […] the goods have […] characteristics, […] uses [or] benefits […] which they do not have;

*     *     *

> (vii)    Representing that […] the goods are of a particular standard, quality, or grade […] if they are of another; and

\*   \*   \*

> (ix)   Advertising goods […] with intent not to sell them as
>        advertised.

74.   Defendant violated the PUTPCPL and engaged in deceptive conduct by selling the Affected Models with similar or identical lithium ion batteries to those in the Note 7, with knowledge that the batteries pose a risk of overheating, fire, and explosion.  Defendant also engaged in deceptive conduct by failing to offer owners of the Affected Models the same remedies offered as part of the Note 7 Refund and Exchange Program despite knowledge that the Affected Models also pose a risk of overheating, fire, and explosion.

75.   Moreover, Defendant violated the PUTPCPL by failing to disclose to consumers that the Affected Models are made with similar or identical lithium ion batteries to those in the Note 7 and also pose a risk of overheating, fire, and explosion.

76.   Defendant was in a position to know, both from its own knowledge and from outside sources, that the Affected Models were prone to overheating, catching fire, and exploding.

77.   Defendant intended that Plaintiff and members of the Pennsylvania Subclass would rely on Defendant's omissions, and any reasonable consumer would deem the omissions material to the purchase of the Affected Models.  Plaintiff and members of the Pennsylvania Subclass would not have purchased Defendant's Affected Models or would have paid less for them had they known of Defendant's omissions.

78.   Defendant is liable to Plaintiff and the Pennsylvania Subclass for actual damages in amounts to be proven at trial or $100, whichever is greater, as well as including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other just and proper relief under 73 P.S. §201-9.2.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment Pled in the Alternative to the Warranty Claim)

79.     Plaintiff repeats the allegations contained in paragraphs 1 to 61 above as if fully set forth herein.

80.     Plaintiff brings this Count individually and on behalf of the members of the Class.

81.     Plaintiff and members of the Class conferred benefits on Defendant by purchasing the Affected Models.

82.     Defendant has been unjustly enriched in retaining revenues derived from Plaintiff's and Class members' purchases of the Affected Models.  Retention of that revenue under these circumstances is unjust and inequitable because Defendant misrepresented facts concerning the characteristics, qualities, and value of the Affected Models and caused Plaintiff and Class members to purchase the Affected Models and to pay more for the Affected Models, which they would not have done had the true facts been known.

83.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action;

B.     For an order declaring that the Defendant's conduct violates the statutes and common law referenced herein;

C.     Awarding compensatory and punitive damages in favor of Plaintiff, members of the Nationwide Class and the Pennsylvania Subclass against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

D.      Awarding injunctive relief against Defendant to prevent Defendant from continuing its ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.     Offering owners of the Affected Models the same remedies that were offered as part of a Note 7 Refund and Exchange Program, including but not limited to the option to exchange an Affected Model for another Samsung smartphone; the option to receive full refund

for the Affected Models and accessories; and the option to receive bill credits if customers turn in their Affected Models;

   F.  For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

   G.  Awarding Plaintiff and members of the Nationwide Class and the Pennsylvania Subclass their reasonable costs and expenses incurred in this action, including  attorney's fees; and

   H.  Awarding such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

   Plaintiff hereby demands a trial by jury on all claims so triable in this action.


Dated:  December 20, 2016     Respectfully submitted,

               **LEVI & KORSINSKY LLP**

               By: *s/ Lori G. Feldman*
                 Lori G. Feldman (LF-3478)

               Lori G. Feldman (LF-3478)
               Courtney E. Maccarone (CM-5863)
               30 Broad Street, 24th Floor
               New York, NY 10004
               Telephone: (212) 363-7500
               Facsimile: (212) 363-7171
               Email: lfeldman@zlk.com
                  cmaccarone@zlk.com

               **WOLF HALDENSTEIN ADLER**
               **FREEMAN & HERZ LLP**
               Janine L. Pollack (JP-0178)
               270 Madison Avenue
               New York, NY  10016
               Telephone: (212) 545-4600
               Facsimile: (212) 545-4653
               Email: pollack@whafh.com

               *Counsel for Plaintiff*